IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



DAVID SCOTT MUSGROVE II, §
§
    Petitioner, §
§
v. § No. 4:10-CV-866-A
§
RICK THALER, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
    Respondent. §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, David Scott Musgrove II, a state prisoner currently serving a 60-year sentence for his conviction for possession of a controlled substance with intent to deliver in the 235th District Court of Tarrant County, Texas, against Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Factual and Procedural History

On December 18, 2007, petitioner pleaded guilty to

possession of methamphetamine, with intent to deliver, in the amount of four grams or more but less than 200 grams to a jury in the 235th District Court of Cooke County, Texas, and the jury assessed his punishment at 60 years confinement and a $10,000 fine. (Clerk's R. at 106) Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Musgrove v. State*, No. 2-08-029-CR, slip op., 2008 WL 5265200 (Tex. App.-Fort Worth Dec.18, 2008) (not designated for publication); *Musgrove v. State*, PDR No. 092-09. Petitioner also filed a state application for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals denied without written order. (02State Habeas R.[1]) This federal petition followed.

In affirming the trial court's judgment, the appellate court summarized the evidence, in relevant part, as follows:

> On August 12, 2004, Narcotic Agent Jack Jones along with ten other agents entered Musgrove's house under a search and arrest warrant. Jones observed Musgrove, a heavy sleeper, in bed with a girl and saw two firearms on a dresser within Musgrove's reach. Officers testified that Musgrove awoke and appeared to

---

[1] "02State Habeas R." refers to the state court record in petitioner's habeas application no. WR-74,261-02. The record is not paginated.

be reaching toward the loaded guns before being straddled by Officer Jones and arrested. The girl, "Misty," testified at trial that she was asleep on the side of the bed closest to the dresser and did not see Musgrove, who did not testify at trial, reach for the guns. She also testified that methamphetamine had been sold from the house between 2004 and 2006. A search warrant yielded:

- two loaded firearms on the dresser within Musgrove's reach;
- a gun safe with eleven or twelve rifles inside;
- drug paraphernalia including a meth bowl pipe;
- stolen inspection stickers on two vehicles on the property;
- a stolen laptop computer;
- body armor;
- a painted plywood depiction of a marijuana leaf, hanging on the wall;
- inspection stickers stolen from Hogan's Jiff-E-Lube;
- a computer scanner and printer, along with evidence of counterfeiting currency;
- scales;
- a stun gun;
- a surveillance camera;
- $65,000 worth of stolen jewelry;
- a pair of night vision binoculars in the gun cabinet;
- small ziploc bags;
- a credit card terminal; and
- a Ronson butane lighter.

　　Musgrove pleaded guilty before the jury to possession of more than four and less than 200 grams of methamphetamine with intent to deliver. The only issues before the jury were punishment and whether Musgrove used or exhibited a deadly weapon in the commission of the offense.

. . .

*Musgrove*, 2008 WL 5265200, at *1-2.

## II. Issues

Petitioner raises three grounds, in which he claims that the trial court erred by submitting a deadly weapon issue to the jury and entering a deadly weapon finding in the judgment and that he received ineffective assistance of counsel at trial and on appeal. (Pet. at 7)

## III. Rule 5 Statement

Respondent believes petitioner has filed his petition in a timely manner and has exhausted his state court remedies as to the claims raised. 28 U.S.C. §§ 2244(d)(1), 2254(b)(1). (Resp't Ans. at 4)

## IV. Discussion

### A. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. §

2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to explicit and implicit findings of fact which are necessary to the state court's conclusions of mixed law and fact and to the state court's credibility determinations. *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). The petitioner has the burden of rebutting

the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied, and imply fact findings consistent with the state court's disposition. *Townsend v. Sain*, 372 U.S. 293, 314 (1963)[2]; *Catalan v. Cockrell*, 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez*, 274 F.3d at 948 n.11; *Goodwin v. Johnson*, 132 F.3d 162, 183 (5th Cir. 1997).

B.  *Deadly Weapon Finding*

Petitioner claims the trial court erred by submitting a deadly weapon issue to the jury and entering a deadly weapon finding in the judgment because the state failed to provide written notice that it intended to seek such a finding and file

---

[2]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

the notice in the court's jacket. (Supp. to Pet. at 7 & 7C; Pet'r Mem. of Law at 7-12) As a matter of federal constitutional due process, a criminal defendant is entitled to notice of the charges against him, including notice of sentencing issues such as an intent to seek a deadly weapon finding, so that he can prepare a trial defense.[3] *Ables v. Scott*, 73 F.3d 591, 593 (5th Cir. 1996) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)); *McKay v. Collins*, 12 F.3d 66, 69 (5th Cir. 1994); *Brooks v. Texas*, 847 s.W.2d 247, 248 (Tex. Crim. App. 1993).

In this case, trial counsel conceded on the record that the defense was notified prior to trial of the state's intent to seek a deadly weapon finding and complained only that the notice was not proper because it was not filed in the court file and made a part of the proceedings. (RR, vol. 6, at 97, 102-04) Based on counsel's concession, the state courts could have determined petitioner received constitutionally adequate notice before trial of the state's intent, was aware that the finding would be sought, and was able to respond accordingly. Petitioner cites no

---

[3]To the extent petitioner claims his rights under the Texas Constitution were violated in the grounds presented, he fails to state a claim(s) cognizable on federal habeas review. *Sharp v. Johnson*, 107 F.3d 282, 290 (5th Cir. 1997); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

7

legal authority mandating the notice must be filed in the court papers, and none is found. Petitioner has failed to demonstrate the state courts' denial of the claim was contrary to or involved an unreasonable application of federal law on the issue or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d).

### C. *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington* regardless of whether the petitioner pleaded guilty or not guilty. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result

of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Petitioner raised his ineffective assistance claims in his state habeas application, but the state habeas judge, who also presided over petitioner's trial, did not conduct a hearing or enter findings of fact, and the Texas Court of Criminal Appeals denied the application without written order. (State Habeas R. "Clerk's Certificate Under Art. 11.07, Sec. 2(c), V.A.C.C.P.") Thus, this court assumes the Texas Court of Criminal Appeals

9

applied a *Strickland* analysis and found either that petitioner's counsel was not deficient or that petitioner was not prejudiced by his counsel's performance. *See Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003). Assuming the state court made implicit findings consistent with its denial of petitioner's claims, petitioner has presented no evidence in his petition that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland*.

**(1) Trial Counsel**

Petitioner contends trial counsel was ineffective by (1) failing to advise him that a deadly weapon would be a fact issue at trial, (2) failing to discuss or advise him regarding the adverse effect of a deadly weapon finding under sentencing and parole laws, (3) inducing him to plead guilty by promising leniency of punishment, (4) persuading him to go to the jury for punishment, (5) failing to advocate the current law requiring written notice of the state's intent to seek a deadly weapon finding, (6) failing to exercise due diligence in preparing for trial, (7) failing to interview state witnesses and objecting to extraneous offense evidence, and (8) failing to advocate at the bare minimum standard of reasonableness, which, in cumulative effect, rendered his plea involuntary and unknowing. (Pet. at 7

& 7B-C; Pet'r Mem. of Law at 12-19) Petitioner's claims are multifarious and addressed as thoroughly as practicable.

Petitioner claims counsel was ineffective by failing to advise him that a deadly weapon would be a fact issue at trial, failing to discuss and advise him regarding the adverse effect of such a finding under sentencing and parole laws, failing to argue the issue at trial, and persuading him to go to the jury for punishment. Petitioner asserts he would not have pleaded guilty if this issue was made known to him before trial. (Pet'r Mem. of Law at 13)

As noted above, counsel was aware the state would seek a deadly weapon finding, and it is presumed counsel advised petitioner of the ramifications of such a finding. Furthermore, notwithstanding those ramifications, petitioner rejected the state's plea offers of "14 years" and "40 years aggravated," and filed an "Application for Community Supervision from the Jury." (RR, vol. 3, at 12-13) The defensive strategy was clearly to admit guilt, to accept responsibility, to urge leniency and community supervision based on petitioner's lack of a felony criminal record, his parental responsibilities to his children, the small amount of contraband seized, and the addictive and damaging effects of methamphetamine on users like petitioner, and

11

to emphasize petitioner's need for rehabilitation versus imprisonment. (Clerk's R. at 94; RR, vol. 6, at 115-25) Under Texas law, only the jury is authorized to grant a defendant community supervision when the offense involves the use of a deadly weapon. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010). Thus, based on the defensive strategy, counsel's strategy was not unreasonable. (RR, vol. 6, at 59) Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas relief. *Strickland*, 460 U.S. at 689.

Nor does the record reflect petitioner's plea was rendered involuntary due to counsel's advice. Petitioner did not assert and/or present proof in the state habeas proceedings that counsel promised leniency, guaranteed a lesser sentence, or led petitioner to believe there was a prearrangement as to a sentence or community supervision. Petitioner merely asserts counsel "pondered" petitioner's dilemma and stated "that due to Petitioner's criminal record being free of any felony charge, and the small amount of drugs actually found, Petitioner would surely receive the low end range and community supervision." (Pet'r Mem. of Law at 16) A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would

12

receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. *See Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993) (defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel). Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed. *See Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989) (defense counsel's statement that the defendant would probably receive less than a fifteen year sentence did not render the guilty plea involuntary because a "prediction, prognosis, or statement of probabilities . . . does not constitute an 'actual promise.'"); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary.").

Petitioner testified in open court that he understood the rights he was giving up by pleading guilty, he understood he did not have to plead guilty, he was aware of the punishment range

13

for the offense, he understood the jury did not have to grant him community supervision and that up to that point he was satisfied with counsel's performance. (RR, vol. 3, at 11-17) Petitioner also testified at the close of the punishment phase that he was satisfied with counsel's services. (*Id.* at 93) Petitioner's assertion, after the fact, that he did not know the effects of a deadly weapon finding does not render his plea involuntary. In determining whether a plea is voluntary and intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991). Having entered a voluntary guilty plea, petitioner had no choice but to go to the jury for sentencing in hope of community supervision.

Finally, there is no evidence in the record regarding the nature and extent of counsel's investigation and preparation for trial, and petitioner presented no evidence, *via* affidavit or otherwise, in the state habeas proceedings establishing what a more thorough investigation would have revealed. Nor did petitioner show that Misty, or any other state witness, would have agreed to be interviewed by trial counsel and had any knowledge not otherwise disclosed to the jury at trial.

Addtionally, under state law, petitioner's prior offenses, even unadjudicated ones, are proper matters of proof at a punishment hearing, and the jury was instructed on the state's burden of proof regarding the offenses. (Clerk's R. at 101-02) TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (Vernon Supp. 2010). Counsel is not required to make frivolous objections. *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Overall, trial counsel adopted a viable defense, filed relevant motions, conducted voir dire, made meritorious objections, effectively cross-examined state witnesses, and gave opening and closing arguments. The right to counsel does not require errorless counsel. *Johnson v. Estelle*, 704 F.2d 232, 239 (5th Cir. 1983). A petitioner is required to demonstrate that counsel's performance, in light of the entire proceeding, was so inadequate as to render his trial unfair. *Washington v. Watkins*, 655 F.2d 1346, 1355 (5th Cir. 1981). Having reviewed the entirety of the record, counsel's performance was not outside the wide range of professionally competent assistance, and petitioner has failed to show that but for counsel's acts or omissions, his sentence would have been significantly less harsh. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

### (2) Appellate Counsel

Petitioner contends appellate counsel was ineffective by failing "to present and effectively advocate" his "notice" claim under subsection (B) and, thus, his right to counsel was violated due to counsel's apparent oversight. (Pet. at 7 & 7A; Pet'r Mem. of Law at 7-12) Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). Furthermore, prejudice does not result from appellate counsel's failure to assert a meritless claim or a meritless argument. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows, that counsel was not ineffective for failing to raise the issue on appeal.

In summary, the state court's adjudication of petitioner's claims is not unreasonable nor is it contrary to or involve an unreasonable application of *Strickland*. Therefore, petitioner is not entitled to federal habeas relief. It follows that he is not entitled to an evidentiary hearing.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.

Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED August 5, 2011.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE